## HARRIS MEAT & PRODUCE CO. et al. v. BROWN et al.

No. 26697.   June 30, 1936.

Butler & Brown, for petitioners.

Fred M. Hammer, M. J. Parmenter, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM.   This is an original proceeding in this court brought by Harris Meat & Produce Company and Equity Mutual Insurance Company, as petitioners, to obtain the review of an award made by the State Industrial Commission in favor of the respondent Henry G. Brown.

The respondent on February 11, 1935, while engaged in repairing certain refrigerating machinery for the petitioner Harris Meat & Produce Company sustained an accidental injury resulting in the total loss of vision of one eye and a 20 per cent. loss of vision in the other. The injury and extent thereof is not an issue here. Petitioners furnished medical attention and paid compensation at the rate of $10.27 per week to the respondent during the period of his temporary total disability resulting from the accident. Respondent applied for compensation on account of permanent partial disability. Hearings were held on this application and on September 14, 1935, the commission entered the order and made the award, which order was amended in minor respects by order of September 21, 1935, and which we are now called upon to review. Petitioners attack only the finding of the commission relative to the status of the respondent and the finding as to respondent's average daily wage.

The petitioners urge first that respondent was an independent contractor and not an employee within the terms and meaning of the Workmen's Compensation Act. In support of this contention we are cited to Southern Const. Co. v. State Industrial Commission, 112 Okla. 248, 240 P. 613; Evans v. State Industrial Commission, 161 Okla. 288, 18 P. (2d) 885; Utility Coal Co. v. Rogez, 170 Okla. 264, 39 P. (2d) 60; Ludlow v. State Industrial Commission (Utah) 235 P. 884; Tahona Smokeless Coal Co. v. State Industrial Commission, 128 Okla. 188, 261 P. 941; Midland Oil & Gas Co. v. Creel, 89 Okla. 23, 213 P. 852; Producers' Lumber Co. v. Butler, 87 Okla. 172, 209 P. 738; Fox v. Dunning et al., 124 Okla. 228, 255 P. 582. We have carefully examined all of the above-cited decisions, but we find ourselves unable, under the record before us in this case, to place thereon the interpretation sought by the petitioners. The salient portions of the record essential to an understanding of the case at bar disclose substantially the following situation: The respondent was an employee of an ice company in capacity of engineer, and had been so employed for several years prior to the date of the injury. He was not engaged in doing work generally for others and did not carry on a contracting business. However, it appears that some

time prior to the date of his injury he had assisted another party in doing some work for the petitioner; that the petitioner through its owner and manager requested respondent to come to their place of business and on his arrival informed him that they had a leak in their refrigerating system; that its manager gave him some slight assistance in locating the leak, made some suggestions in regard thereto, and gave a few general directions and left the respondent to make the necessary repairs; that no discussion of the terms or conditions of employment was had, but that apparently the petitioner expected the respondent to give his personal services and attention in making the repairs; that respondent attempted to do the work, but had continued thereat but a short time before the accident happened; that the work was of a mechanical and manual nature involving the use of some very simple tools, chiefly wrenches, and was not of a nature which would require continued control and supervision; that respondent was to receive 70 cents per hour for his services; that in addition to his wages as an engineer with the ice company respondent had also done certain work as a bookkeeper for which he had received $125 during the preceding year; that his wages as an engineer and in the line of work in which he was injured had amounted to the sum of $859 53 during the year preceding his injury.

In the cases cited by petitioners, and numerous other decisions of this court not cited, we have had occasion to distinguish independent contractors, servants, agents, and employees, and we have repeatedly held that where an individual is in fact an independent contractor, he may not recover compensation from the employer under the Workmen's Compensation Law of this state. However, as said in the case of Getman-McDonell-Summers Drug Co. v. Acosta, 162 Okla. 77, 19 P. (2d) 149:

"Many authorities are cited by both plaintiff and defendant, but the authorities so cited are in sharp conflict and cannot be reconciled. For that reason we do not attempt to distinguish the particular cases cited. This court, in the case of Hamilton v. Okla. Trading Co., 33 Okla. 81, 124 P. 38, holds:

" 'As a general rule the line of demarcation between an independent contractor and a servant is one not clearly drawn by the courts. The question must be determined upon the facts peculiar to each case.'

"With the above announced rule we agree, and we do not attempt to lay down any particular rule by which an agent or servant can be distinguished from an independent contractor.

"Practically all of the authorities, in discussing this question, lay down the general broad rule that in determining whether a person is an agent or an independent contractor, it is necessary to look first to the contract and the practices under it, together with the results to be accomplished. We also find that the following elements are considered in determining whether a party is an agent or an independent contractor: (1) The degree of control exercised by the employer, or the independence enjoyed by the contractor or agent; (2) whether the party is to be paid by the job or is to receive a certain salary by the day, week 'or month; (3) whether his employment consists solely in working for his employer; (4) the control that is exercised over him in the method and manner of performing the work; (5) whether the agent uses his own equipment, or whether the equipment, if any, so used is owned and controlled by the owner; and (6) the nature of the contract, whether written or oral."

See, also, Barnsdall Ref. Co. v. State Industrial Commission, 163 Okla. 154, 21 P. (2d) 749.

In the case at bar we find no particular feature of the evidence which is decisive. However, it is noted that the work in which the respondent was engaged at the time of his injury was mechanical and manual and of the same nature as that in which he had been engaged for more than a year prior to his injury; that the tools required to perform the work were simple; that there was no necessity of continued and strict supervision or control on the part of the employer and that there was no express contract either written or oral between the parties; that the degree of independence reserved by the respondent, if any, was not definite, but from the testimony, taken as a whole, it is apparent that the parties at the time considered themselves as occupying the relation of employer and employee, and until this proceeding was brought there was no thought by either of the interested parties that any different relation might exist. The Workman's Compensation Act defines "employee" and "wages" (subdivisions 4 and 8 of section 13350, O. S. 1931). These are correlative terms and must be construed together. Coweta Casing Crew v. Horn, 106 Okla. 138, 233 P. 475. In the absence of a clear intention to the contrary, words should receive their natural, ordinary, and usual interpretation and should not be given a strained and unusual meaning. The respondent had been receiving wages for his mechanical and manual services in the employment of the ice

company and was an employee of such company. In the work which he undertook to perform for the petitioner he was likewise to receive wages; and while the emp'oyment was for a comparatively short period of time and for a single purpose, nevertheless we can perceive no good reason why it shou d be distinguished from the like employment in which respondent was engaged a major portion of the time. The words "employee" and "wages" connote the same thing. An employee receives wages, and wages are paid to an employee. While we are of the opinion that the evidence before the Industrial Commission clearly established the fact that the relation between the petitioner and respondent was that of employer and emp'oyee, nevertheless, if there was any conflict in the evidence in this respect, it would be ruled by what we have said in Federal Mining & Smelting Co. v. Thomas, 99 Okla. 24, 225 P. 967, and Oklahoma Pipe Line Co. v. Lindsey, 113 Okla. 296, 241 P. 1092. As said in Oklahoma Pipe Line Co. v. Lindsey, supra:

"Whether a workman is an employee or an independent contractor is a question of fact upon which the judgment of the Industrial Commission is conclusive, where the facts are in dispute. It only becomes a question of law when no other inference can reasonably be drawn from the facts than that the workman was an independent contractor. The decision of the commission that the workman is an employee and not an independent contractor is conclusive where the facts are in dispute."

For the reasons above stated, we conclude that there was no error in the finding of the commission that respondent was an employee of the petitioner.

It is next contended by petitioner that the commission erred as a matter of law in finding that respondent's daily wage was $3.28, and in awarding compensation upon that basis. Both petitioner and respondent agree that the average annual earnings of respondent are properly ascertainable under subdivision 1 of section 13355, O. S. 1931. Disagreement arises over the apparent inclusion by the commission of an item of $125 received by respondent for bookkeeping services during the year preceding his injury to the wages received by respondent during said year as engineer and in which type of work respondent was engaged at the time of his injury. The commission found that the daily wage of respondent was $3.28. In order to do this they had to include the salary as a bookkeeper with the item of wages. Subdivision 1, section 13355, O. S. 1931, was the proper method to pursue in ascertaining the average annual earnings of the employee. City of Norman v. Bowers, 154 Okla. 200, 7 P. (2d) 482; and as we have said in Dunning Const. Co. v. Franklin, 166 Okla. 198, 26 P. (2d) 914:

"Where the question of fact to be determined by the State Industrial Commission is the average weekly wages of an injured employee at the time of the injury, and it is shown by competent evidence that such employee at the time of the injury was engaged in the same kind of work as that in which he had been engaged during substantially the whole of the year immediately preceding his injury, the average weekly wages shall be determined by the provisions of subdivision 1 of section 13355, O. S. 1931, and it is not material who his employer may have been during such period of time, nor how long he may have worked for the employer for whom he was working at the time of the injury."

However, where an employee earns income from outside and different sources, the rule has been announced in Handfield Pet. Co. v. Allen, 157 Okla. 114, 11 P.(2d) 175, as follows:

"A workman who is employed under separate concurrent contracts is entitled to compensation based upon his entire wages under such contracts upon receiving an injury while in the performance of his duties under one of the contracts. But profits derived from a business enterprise conducted by the workman during the time of his employment are not to be considered in determining the amount of his average weekly wages for the twelve-month period immediately preceding the injury."

Under these circumstances, we are of the opinion that the State Industrial Commission was in error in including the salary received by the respondent for his bookkeeping services in arriving at his average annual earnings for the year preceding his injury, since the work done was unrelated and disconnected from the employment in which the respondent was engaged. Under the statute, subdivision 1, section 13355, supra, it is apparent that the wages or salary therein referred to has reference to the employment in which the employee has worked during substantial'y the whole of the year and is limited thereto. This is not to read into the statute something that is not there, but is merely to give effect to the language used by the Legislature and to extend a full measure of protection both to the employee and to the employer. Nothing less would be proper and nothing more should be required.

**320**

However, it must be noted that said subdivision 1 of the statute, section 13355, supra, provides "his average annual earnings shall consist of 300 times the average daily wage or salary which he shall have earned in such employment during the days when so employed." In other words, the process is one of multiplication and not division. Evidence should be furnished the commission as to the average daily wage or salary of the employee during the days employed and this multiplied by 300 gives the average annual earnings of the employee. The actual wage or salary received by the employee during the year is not to be divided by 300 in arriving at the average daily wage. The distinction appears to be disregarded in every instance. Since there is no evidence shown as having been before the commission on which to base their finding, a reversal for this reason must be had.

The findings of the State Industrial Commission will be affirmed in all respects except as to the finding of the daily wage of the respondent, and as respects such finding will be vacated, with directions to the State Industrial Commission to make the proper finding on this issue consistent with the views herein expressed.

Award vacated, with directions.

OSBORN, V. C. J., and RILEY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. McNEILL, C. J., and BAYLESS and BUSBY, JJ., absent.