**C & H TRANSPORTATION COMPANY and Commercial Standard Insurance Company, Petitioners,**

**v.**

**Helen T. McLAUGHLIN and State Industrial Court, Respondents.**

**No. 42249.**

Supreme Court of Oklahoma.

Sept. 12, 1967.

Covington, Gibbon & Poe, by A. M. Covington and James E. Poe, Tulsa, for petitioners.

Dennis J. Downing and William A. Harrington, Tulsa, Charles R. Nesbitt, Atty. Gen., for respondents.

WILLIAMS, Justice:

This is an original proceeding to review an award of the State Industrial Court in favor of the claimant for the death of her husband, William E. McLaughlin, under the death benefit provisions of the Workmen's Compensation Act (85 O.S. 1961 § 22(7). Parties will be referred to as they appeared before the Industrial Court. The deceased workman will be referred to as "deceased". Lee C. Moore Corporation will be referred to as "Moore" or "Shipper".

Claimant, as administratrix of the estate of the deceased workman, brought the proceeding in the trial court to recover the death benefits arising out of his death on behalf of the next of kin of the deceased. Deceased left surviving him as next of kin, his wife, Helen T. McLaughlin, and two adult sons. It is conceded that the two adult sons were not dependent on deceased and the benefits if recovered inure to the exclusive benefit of the surviving widow. It is also conceded that the deceased at the time he sustained the fatal injuries was working at a hazardous occupation covered by the Oklahoma Workmen's Compensation Act.

The deceased was killed on January 7, 1966, in a collision between his own pickup truck, driven by him, eight miles south of Hugo, Oklahoma, and another object. At the time of the collision the deceased was transporting freight for the respondent.

Respondent's sole contention on appeal is that at the time of the accident the deceased was operating his own pickup truck as an independent contractor and not as an employee of the respondent within the purview of the Oklahoma Workmen's Compensation Act.

The evidence is undisputed. Respondent is a motor carrier for hire engaged in the oil field trucking business and operates large trucks for the hauling of oil-field equipment. In the conduct of its business respondent found that quite frequently a customer would need to transport quickly a small item of freight weighing less than 1500 pounds. In order to supply this need to its customers respondent established a "hotshot" service. It made arrangements with owners of small trucks to transport these small shipments for its customers.

On January 7, 1966, the deceased McLaughlin was driving his own truck as a hotshot operator for respondent. He was the only hotshop operator working for the respondent at the time and had been working in such capacity for the respondent for several years. As a hotshot operator he was on twenty-four hour call by the respondent. If away from his home he either would advise the respondent or his wife where he could be located. Upon receiving a request from one of its customers to haul a small or hotshot shipment the respondent would call the deceased. The deceased then would drive his truck to the customer's place of business and accept the shipment as the agent of respondent. The shipment would be transported under respondent's bill of lading. The respondent paid the deceased twenty-eight cents per mile one way (or on a mileage basis of fourteen cents per mile traveled each way) on each shipment.

The respondent then would bill the customer for the shipping charges at $.40 per mile one way. Mr. McLaughlin was paid by check of the respondent at the completion of each trip. The mileage was figured on the basis of the route suggested in the Oil Field Haulers Associated Guide, that ordinarily being the shortest and quickest route from the point of departure to point of destination.

Customers of the respondent knew that the deceased was serving as a hotshot operator for the respondent. On some occasions, particularly at night when respondent's business office was closed, the customer called the deceased direct. Deceased was authorized by the respondent to accept such shipments for the respondent and do the hauling. In such cases the shipment was made under respondent's bill of lading.

The evidence established that for 3½ years time prior to his fatal accident during which the deceased had done hauling for respondent he had restricted his trucking activities solely to hauling for the respondent although the testimony was that he was not required to so limit his activities.

The agreement between the deceased and the respondent was oral and could be terminated by either party at any time.

As previously stated, the deceased owned the pickup truck he was driving at the time the accident occurred. He purchased the gasoline and oil for operating it and paid all expenses connected with the operation of the truck. The respondent exercised no supervision over the operation of the truck from the standpoint of safety, its condition or the method it was being operated.

There is hardly any confusion as to whether or not the respondent withheld social security or income taxes from payments it made to the deceased. Claimant submitted in evidence the deceased's W-2 for the year 1964. The form shows that the respondent paid deceased's F.I.C.A. taxable wages in the amount of $70.40 during the year 1964 on which it withheld income taxes of $6.22 and F.I.C.A. taxes of $2.55. The evidence establishes that during the year 1964 the deceased may have done some work for the respondent for which he was paid on an hourly basis although on the greater portion of his work he was paid on a mileage basis. Respondent's terminal manager testified that deceased paid his own social security and income taxes. The record reflects that the terminal manager may not have been in a position to testify accurately on such subject. He said that he was present on several occasions when the deceased was paid after making a trip and the deceased was paid the entire amount for the trip calculated on a mileage basis without the withholding of any amount for taxes.

The deceased had no permits or certificates in his name from the proper governmental agencies authorizing him to haul freight as a motor freight carrier for hire.

The shipment being hauled by the deceased on the date of the accident was shipped by Lee C. Moore Corporation. A representative of Lee C. Moore Corporation called the respondent's dispatcher. He told the dispatcher that he had a hotshot shipment for transportation and asked the dispatcher to notify the deceased. The deceased had previously notified the dispatcher that if needed he could be located at Pryor, Oklahoma, where he was visiting his mother. The dispatcher called the deceased and he in turn picked up the shipment for Moore in Tulsa to be delivered to the Delta Marine Drilling Co. at Jennings, Louisiana. The merchandise was shipped on the bill of lading of respondent. The deceased accepted the shipment as the representative of the respondent and signed the bill of lading as its representative. While transporting the shipment at a point on the highway near Hugo, Oklahoma, deceased's truck was involved in a collision. He sustained serious injuries which resulted in his death.

Among other items of testimony considered salient by this Court was that of the terminal manager who said that Mr. McLaughlin was the man the company was looking to and that he had no right to substitute other drivers for himself.

We have held in numerous cases that an "independent contractor" is one who engages to perform certain services for another, according to his own method, free from control and direction of the party securing the services in all matters connected with the performance of the services, save and except as to the result or product of his work. Mistletoe Express Service v. Britt, Okl., 405 P.2d 4; Major Leasing Service Co. v. Cross, Okl., 394 P.2d 487; Brewer v. Bama Pie Inc., Okl., 390 P.2d 500, and numerous other decisions.

The question of whether one is an independent contractor or employee "is often very difficult to determine". Ellis & Lewis, Inc. v. Trimble, 177 Okl. 5, 57 P.2d 244. The line of demarcation between the two is not one easily drawn by the courts. The question must be determined by the factual situation peculiar to each case. Mistletoe Express Service v. Britt; Major Leasing Service Co. v. Cross, supra, and numerous other decisions.

Deceased was paid by the respondent on a mileage basis for his hotshot trips at the time each such trip was finished. We have held many times that the method of payment is a factor to be considered in determining the relationship between the parties but is not a controlling factor. Brewer v. Bama Pie, Inc., Okl., supra; Fuller White Chevrolet Co. v. Graham, Okl., 355 P.2d 557; Woods County v. Tucker, Okl., 312 P.2d 452; State Highway Commission v. Brewer, 196 Okl. 437, 165 P.2d 612.

The fact that the deceased furnished his own truck in hauling the shipment for the respondent is "not the determining factor" to be considered in establishing the relationship of the parties. Woods County v. Tucker, and Brewer v. Bama Pie Inc., both supra.

While only slight confusion, if any, exists as to whether or not respondent made tax deductions from the various payments of different sorts made to the deceased, the fact that the respondent did not withhold social security, income tax and other deductions from the payments is not decisive in determining the relationship between the parties. Major Leasing Service Co. v. Cross, supra.

The fact that respondent did not carry deceased on its payroll did not make the deceased an independent contractor. Campbell v. Elledge, 184 Okl. 147, 85 P.2d 412.

The fact that respondent had the right to terminate its relationship with the deceased and discharge him at any time is a strong indication that the relationship was that of employer and employee and not that of independent contractor. Brewer v. Bama Pie, Inc., supra; Butler v. Wallace, Okl., 318 P.2d 440; State Highway Commission v. Gaston, 185 Okl. 540, 94 P.2d 915.

Likewise the fact that deceased confined his hauling activities solely to work for the respondent and did not haul for others is a circumstance indicating that the relationship was that of employer and employee. Butler v. Wallace, supra; Harris Meat & Produce Co. v. Brown, 177 Okl. 317, 59 P.2d 280.

We have held that where the relationship of employer and employee is an issue in a proceeding before the State Industrial Court this Court is not required to accept the findings of such tribunal as conclusive but will review the evidence and make its own independent findings of fact and conclusions as to such issue. Mistletoe Express Service v. Britt; Major Leasing Service Co. v. Cross; Brewer v. Bama Pie, Inc., and numerous other decisions.

We have carefully considered and weighed the facts and evidence in this case and reach the conclusion that such facts and evidence sustain the findings of the State Industrial Court that the deceased at the time of receiving fatal injuries was an employee of the respondent. We so hold.

Respondent, alone, could legally contract with the shipper for the transportation of its merchandise by motor freight from Tulsa, Oklahoma, to Jennings, Louisi-

ana. The deceased possessed no permit or certificate authorizing him to transport freight as an interstate motor carrier. Standing alone the fact that the deceased may have been hauling freight illegally (i. e., without governmental permits in his own name) does not destroy the relationship of independent contractor. Bradley v. Chickasha Cotton Oil Co., 184 Okl. 51, 84 P.2d 629. However, we deem it to be an important factor in determining the relationship of the parties. The shipment in any given case was made under a bill of lading issued by the respondent. Under the terms of its bill of lading the respondent was charged with the obligation of timely transporting the freight shipment efficiently and safely. Had a shipment been delayed or damaged while in transit, the shipper under the bill of lading could have asserted a claim for damages against the respondent. Respondent's terminal manager testified that respondent company only, as distinguished from its customers, paid Mr. Mc-Laughlin; that company had a right to tell him whether to go, where to go and when to go and to terminate the arrangement; that he was a good worker; that he "had a pickup, and we used him;" and that company did not require Mr. McLaughlin to carry cargo insurance on his freight.

As to whether the equipment claimant's decedent was hauling at the time the accident involved herein occurred was damaged, such manager answered "They received it back in good order."

The shipper made its arrangements for transporting the shipment with the respondent, not with the deceased. The shipment was transported under the bill of lading of the respondent. The deceased acted as the agent of the respondent in the execution of the bill of lading. He looked to the respondent for payment for his services, not to the shipper. The respondent collected the freight charges from the shipper and then paid the deceased for his services. The deceased had no customers for whom he hauled freight. He was hauling freight solely for the respondent on a trip basis.

He was not performing a similar service for anyone else. Although the pickup truck was his own, he could not delegate the work or driving to some one else. We can only conclude that the relationship between the respondent and the deceased was that of employer and employee.

The decision and award of the State Industrial Court holding the deceased to be an employee of the respondent is sustained by competent evidence and is in accord with the rules of law established by the decisions of this Court.

It is sustained.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, BLACKBIRD, BERRY, HODGES and McINERNEY, JJ., concur.

LAVENDER, J., dissents.