Dear Executive Director Haning,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following question:
 May a state agency enter into a contract for services with attorneys employed full-time by another state agency?
¶ 1 In the situation you have described, the Oklahoma Law Enforcement Retirement System ("OLERS") seeks to contract for legal services on a part-time basis, with three attorneys at the Department of Public Safety ("DPS") who are full-time, unclassified employees of that agency.[1] You have stated in your letter that the attorneys would not become employees of OLERS, but would, instead, enter into a contractual relationship. The attorneys would use annual leave and compensatory time to arrange their schedules so as to be free to provide services to OLERS.
¶ 2 In order to obtain legal services other than from the Attorney General, a state agency must have statutory authority to do so. A.G. Opin. No. 83-058. To this end, 47 O.S. 2-303.1
(1992), provides, in part:
 I. The [Oklahoma Law Enforcement Retirement] Board may retain an attorney licensed to practice law in this state. The attorney shall serve at the pleasure of the Board for such compensation as set by the Board. The Attorney General shall furnish such legal services as may be requested by the Board.
¶ 3 Recognizing the potential for conflict of interest inherent in transactions between state agencies and state employees, the Oklahoma Legislature enacted the Oklahoma Ethics Commission Act,74 O.S. 4200 (1991), et seq., as amended (the "Ethics Act"). Section 74 O.S. 4241 of the Ethics Act, provides, in part:
No state employee shall:
* * *
 4. Sell, offer to sell or cause to be sold, either as an individual or through any business enterprise in which he holds a substantial financial interest, goods or services to any state agency or to any business entity licensed by or regulated by the state governmental entity which the officer or employee serves, except as provided in Section 4243 of this title[.]
74 O.S. 4241 (1992)
¶ 4 Title 74 O.S. 4243 (1991), provides:
A. No state agency shall:
 1. Enter into any contract with an employee of the agency, or with a business in which an employee holds a substantial interest, unless the contract is made after public notice by the agency and compliance with competitive bidding procedures. This paragraph shall not apply to a contract of employment with the state[.]
(Emphasis added.)
¶ 5 Willful violation of 74 O.S. 4241 or 74 O.S. 4243
constitutes a misdemeanor. As these are penal in nature, they must be construed strictly against the state and liberally in favor of an accused. State v. Humphrey, 620 P.2d 408 (Okl.Cr. 1980). Of course, it is necessary to seek and give effect to the legislative intent therein. Hess v. Excise Board of McCurtainCounty, 698 P.2d 930 (Okla. 1985).
¶ 6 Section 74 O.S. 4241(4) prohibits any state employee from selling any goods or services to any state agency. While this would be a blanket prohibition if it stood alone, there is an exception in 74 O.S. 4243, as noted above. A plain reading of the exception in 74 O.S. 4243(A)(1) would prohibit an agency from entering into a contract with an employee of the same agency unless public notice was given and the contract was made in compliance with competitive bidding requirements. Thus, on its face, the exception in 4243 is not applicable when a state agency seeks to enter into a contractual relationship with employees of another state agency.
¶ 7 To construe these particular statutes, several rules of statutory construction are appropriate. The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed in the statute. Jackson v. Independent School DistrictNo. 16 of Payne County, 648 P.2d 26 (Okla. 1982). Furthermore, a statute should be given a sensible construction, bearing in mind the evils intended to be avoided or the remedy afforded. AMFTubescope Co. v. Hatchel, 547 P.2d 374 (Okla. 1976).
¶ 8 The evil to be avoided by 74 O.S. 4241 is the undue influence that a state employee might be able to exercise upon a state agency in the process involved in negotiating and awarding a contract for goods or services that is not necessarily in the best interest of the taxpayers. Section 74 O.S. 4243, which provides the exception to 4241, prevents such influence by requiring a state agency to give public notice and to comply with competitive bidding procedures before it enters into a contract with an employee of that agency. This exception clearly allows a state agency to contract with its own employees, albeit after public notice and competitive bids; but the section seems to forbid the same process if the state employee works for a different agency. Such a result would, however, be absurd. Arguably, there is less cause for concern in the situation presented by your question in view of the fact that these employees do not work for your agency. Surely, the Legislature did not intend such an absurd result. It is our opinion that 4243 should be construed so that a state agency could contract with its employees or employees of other state agencies, but only after public notice and competitive bidding for the contract. To the extent A.G. Opin. No. 80-213 is inconsistent with this opinion, it is withdrawn.[2]
¶ 9 While it is our conclusion that the Ethics Act does not prohibit the contractual relationship sought by OLERS, the circumstances of this relationship require us to urge that special caution be taken in this matter. In the discharge of their duties, state agencies and employees must, of course, comply with the letter of the law and avoid even the appearance of impropriety. Westinghouse Electric Corporation v. Grand RiverDam Authority, 720 P.2d 713 (Okla. 1986). In reviewing the statutes addressed in this opinion, the Oklahoma Supreme Court said in Westinghouse, at pages 717 and 718:
 Government officials and employees must exercise great care to avoid even the appearance of impropriety in their duties; for they, like Caesar's wife, must be above reproach.
¶ 10 Moreover, the Court noted that it is the:
 [P]ublic policy of the state . . . that no state officer or employee may engage in any transaction which is in substantial conflict with the proper discharge of public duties or public interest.
720 P.2d, at 716, citing 74 O.S. 1981, 1402, now codified at74 O.S. 4201(1) (1992), 74 O.S. 4201(11) and 74 O.S.4201(12).
¶ 11 The above-quoted language from Westinghouse is particularly relevant in view of the close relationship maintained between DPS and OLERS. Title 47 O.S. 2-303 (1991), provides that the Oklahoma Law Enforcement Retirement Board shall include, among others, the Assistant Commissioner of Public Safety, two members of the Highway Patrol Division of DPS, and one member of the Communications Division of DPS. Furthermore, a substantial number of the members of OLERS are highway patrol troopers or other DPS personnel. 47 O.S. 2-300 (1992). This creates potential conflicts for attorneys of DPS, who must represent troopers on occasion, in the event there should arise a situation in which those same attorneys must represent OLERS against DPS personnel.
¶ 12 While the existence of a conflict of interest herein would constitute a question of fact for which this office can provide no opinion, we would urge that it remains the duty of all persons involved to be alert to any such conflict and to act promptly and properly to maintain the integrity, in fact and appearance, of OLERS, DPS and the state employees. In addition, your attention is directed to Legal Ethics Opinion No. 305, adopted by the Board of Governors of the Oklahoma Bar Association on December 18, 1992, as it appears to answer a question related to yours. (See, 64 OBAJ 64, 1/16/93).
¶ 13 You have stated that OLERS intends to contract with these attorneys for their services. Whether the contemplated arrangement is a contractual or employment relationship is a question of fact which cannot be answered in an Attorney General Opinion. 74 O.S. 18b(5) (1992). In making this determination, you should carefully consider the definition of "independent contractor." An "independent contractor" is:
 [O]ne who engages to perform certain services for another, according to his own method, free from control and direction of the party securing the services in all matters connected with the performance of the services, save and except as to the result or product of his work.
C H Transportation Co. v. McLaughlin, 434 P.2d 229, 233
(Okla. 1967).
¶ 14 In the event you determine that the arrangement is an employment relationship rather that contractual, then you will need to review the dual employment prohibition found at 74 O.S.4241(6) (1992).[3] Whether the arrangement is one of employment and whether 74 O.S. 4241(6) would prohibit this arrangement are questions of fact which cannot be answered in an Attorney General Opinion.[4]
 ¶ 15 It is, therefore, the official opinion of the AttorneyGeneral that 74 O.S. 4241 (1992) prohibits a state employeefrom entering into a contractual relationship for services withany state agency. Pursuant to 74 O.S. 4243 (1991), however, astate agency may contract with a state employee for goods andservices, but only after public notice and competitive bidding ofthe contract pursuant to the Oklahoma Central Purchasing Act, 74O.S. 85.1 (1991), et seq., as amended. To the extent A.G. Opin.No. 80-213 is inconsistent with this opinion, it is withdrawn.
SUSAN BRIMER LOVING ATTORNEY GENERAL OF OKLAHOMA
JAMES ROBERT JOHNSON ASSISTANT ATTORNEY GENERAL
[1] OLERS was created by an act of the Oklahoma Legislature in 1980 as an entity of the state separate from DPS and is governed by the Oklahoma Law Enforcement Retirement Board (the "Board").47 O.S. 2-300 (1992). Therefore, for the purposes of 74 O.S.4241 (1992) and 74 O.S. 4243 (1991), DPS and OLERS would be considered separate state entities.
[2] State purchases are governed pursuant to the Oklahoma Central Purchasing Act. 74 O.S. 85.1 (1991) et seq., as amended. Title 74 O.S. 85.5 (1991) provides, in part, that "the State Purchasing Director, under the supervision of the Director of Public Affairs, shall have sole and exclusive authority and responsibility for the acquisition of all materials, supplies, equipment, and services acquired, used or consumed by agencies of the state government." Section 74 O.S. 85.7 provides, in part, that "no acquisition or contract shall be made without the submission of competitive bids by the State Purchasing Director" but exempts contracts for professional services, such as legal services, from competitive bid requirements. Since this appears to create a conflict between the requirement in 4243 to meet competitive bid requirements for contracts under that section and the exemption in 85.7 for professional services contracts, it is necessary to apply the rule of statutory construction by which specific provisions in statutes prevail over general provisions.City of Tulsa v. Smittle, 702 P.2d 367 (Okla 1985). Therefore, the specific requirement for competitive bidding in any contract which involves a state employee in 4243 would apply over the general exemption for professional services contracts from the Central Purchasing Act.
[3] Title 74 O.S. 4241(6) (1992) provides that "no state employee shall accept or solicit employment which would impair his independence of judgment in the performance of his public duties."
[4] In this regard, you are directed to A.G. Opin. No. 88-023, which addressed whether a fulltime state employee, in view of 74O.S. 4241(6), could accept compensated, part-time employment with another state agency if the part-time employment did not interfere with the full-time position.