## KEITH
### v.
## MID–CONTINENT PETROLEUM CORP.
No. 35982.

Supreme Court of Oklahoma.
June 22, 1954.

Frank Seay, W. B. Edwards, Seminole, for plaintiff in error.

Truman B. Rucker, R. H. Wills, J. H. Crocker, J. P. Greve, 'J. H. Woodward, Walter B. Hall and Ben Hatcher, Tulsa, for defendant in error.

CORN, Justice.

Plaintiff, administrator of the estate of Dudley Lancaster, deceased, brought this action for the benefit of the surviving widow and minor child, seeking to recover damages for the alleged wrongful death of deceased. A jury trial resulted in a verdict and judgment for defendant.

Disposition of the questions presented by this appeal does not require an extended recitation either of the issues presented by the amended pleadings upon which the case was tried, or of the evidence adduced by the parties.

The corporate defendant owned a wholesale marketing establishment in Seminole, Oklahoma, used for sale and distribution of defendant's petroleum products. February 18, 1946, defendant entered into a Bulk Station Contract with deceased, the pertinent portions of which were in the following form:

"This contract, entered into this 18th. day of February, 1946, by and between Mid-Continent Petroleum Corporation, having an office at Tulsa, Oklahoma, hereinafter called 'Corporation' and Dudley Lancaster of Seminole, Oklahoma, hereinafter called 'Agent' to become effective the 1st. day of April, 1946, and to continue in full force and effect until terminated as hereinafter provided, Witnesseth:

"Corporation hereby authorizes Agent to operate, and Agent hereby agrees to operate, Corporation's Bulk Station No. 184 at Seminole, Oklahoma and in connection therewith to sell and deliver its petroleum and other products, subject to the terms and conditions herein provided, in the following described territory;

"All of Seminole, Pottawatomie and that part of Hughes County south of a line due east and west 1 mile south of Yeager, and Prague in Lincoln County.

"It is specifically understood that Agent is not vested with exclusive rights to sell and deliver Corporation's products in the above described territory.

"1. Corporation shall:

"(a) ship to Agent, at the aforesaid location, such petroleum and other products as may, in the judgment of the corporation, be justified;

"(b) pay to Agent, as soon after the first of each calendar month as practicable, commissions on petroleum and other products sold and delivered by

him at the following rates, expressed in cents per gallon, to-wit:

"(c) not pay commissions on carload or transport sales or deliveries of petroleum or other products, unless agreed to in writing prior to time of sale, nor on sales where shipment or delivery is refused or merchandise is returned;

"(d) pay for power and fuel used in unloading tank cars;

"(e) provide Agent with such truck tanks and truck tank equipment as will, in the opinion of Corporation, meet the needs of Agent, which shall, at all times, remain the property of the Corporation;

"(f) assume and pay all expenses of maintenance and upkeep of Corporation's property.

"2. Agent agrees to;

"(a) accept commissions at the aforesaid rates in full compensation for the performance of all of his duties and obligations hereunder, and pay any and all expenses incurred by him in connection with the performance thereof and all expenses incidental to the operation of the aforesaid Bulk Station, except expenses for power and fuel used in unloading tank cars;

"(b) receive, unload, handle, care for, sell and deliver such petroleum and other products as the Corporation delivers to the aforesaid Bulk Station;

"(c) sell and deliver the aforesaid products for cash only, except when credit is specifically authorized by Corporation in writing, at prices and on terms fixed by Corporation, and invoice all sales and deliveries in the name of Corporation;

"(d) keep a full, true and correct account of all sales and deliveries of the aforesaid products at or from the aforesaid Bulk Station, and make accounting statements and reports of stock on hand, sales and deliveries according to such system and on such forms as Corporation may designate;

"(e) promptly remit to Corporation, at its aforesaid office, all moneys and sales tickets received by him from the sale of the aforesaid products, or, deposit such money in such bank as is designated by Corporation to the account of Corporation and subject to its order;

"(f) permit the making of such audits as Corporation may desire;

"(g) provide, maintain and operate whatever truck chassis as may be necessary to make proper sales and delivery of the aforesaid products in the aforesaid territory; and install on said chassis, truck tanks and truck tank equipment supplied by Corporation;

"(h) pay any and all taxes, license fees, excises, mileage fees and privilege taxes that may be levied or imposed upon said truck or trucks or upon the operation thereof;

"(i) employ, upon his own responsibility and at his own risk and expense, such helpers as may be necessary or convenient for the efficient performance of Agent's duties and obligations hereunder; it being understood and agreed that all such helpers shall be servants and employees of, and under the sole supervision, direction and control of Agent, and that Corporation shall not in any way be liable for their acts and conduct; and Agent further agrees to comply, as an employer, with all the requirements of State and Federal laws, rules and regulations, including Social Security and Unemployment Compensation Laws and to collect, report and pay all taxes required to be paid by such laws by reason of the employment of such helpers, and also to comply, as an employer, with all applicable Workmen's Compensation Laws with reference to such helpers;

"(j) pay for public liability and property damage insurance for each motor vehicle at any time operated by him or his agents, servants, or employees in the performance of this contract, covering liability for injury in one ac-

cident to one person to the amount of not less than Ten Thousand Dollars ($10,000.00) and for injury or injuries in one accident to more than one person to the amount of not less than Twenty Thousand Dollars ($20,000.00), and for damages to property of others, whether one or more in one accident, to the amount of not less than Five Thousand Dollars ($5,000.00); and shall notify Corporation before placing in operation any such motor vehicle; and Corporation is hereby authorized to and shall secure from a reliable insurance company said insurance and keep the policy or policies in its possession during the life of this contract, and is authorized to renew all policies at their expiration under and upon the same terms, conditions and provisions as are hereinafter specified;

"(k) provide and pay for telephone and listing same in telephone directory in the name of Corporation, provided that Corporation will reimburse Agent for the expense of listing in telephone directory in the name of Corporation;

"(*l*) furnish a satisfactory bond, conditioned for the proper remittance to the Corporation of all sums due to it;

"(m) be liable for and Corporation is hereby authorized to deduct and withhold from Agent's commissions or from any compensation due Agent, or to otherwise collect any amount or amounts sufficient to cover petroleum or other products purchased by Agent, cash shortages, merchandise shortages, material shortages, checks accepted in violation of Corporation's 'currency only' instructions, checks accepted from unauthorized non-contract customers, and credit sales not specifically approved by Corporation; and in computing merchandise shortages, if any, Corporation's prevailing wholesale price, in said territory, on date shortage is determined, are to be used;

"(n) indemify Corporation against and save it harmless from all claims, liabilities, losses and suits arising or growing out of the operation of the aforesaid Bulk Station, or out of the acts, omissions and conduct of Agent in connection therewith and the acts, omissions and conduct of all persons employed or allowed by him to participate and assist in the performance of this contract;

"3. It is agreed that the authority and powers of Agent are expressly limited by this contract, and that Agent has no authority or power save and except as is expressly set forth herein.

"4. It is further agreed that Agent, in executing and performing his duties and obligations hereunder, shall at all times be free of and from all supervision, direction or control of or by Corporation.

"5. It is further agreed:

"(a) that this contract may be terminated at any time with or without cause, by either party, upon one (1) day's notice in writing to the other party hereto;

"(b) that upon termination of this contract Agent shall and will, without further notice of any kind, quit and surrender the possession and occupancy of the aforesaid Bulk Station and all moneys and property of every kind and character pertaining to the operation thereof and belonging to the Corporation, to the Corporation, or its authorized representative, and, in particular, shall turn over all records, books and papers of every kind and character, incidental to said business, whether or not said records, books and papers have been furnished by Corporation.

"6. This contract shall not be valid and/or effective until executed by Corporation's Division Manager or Assistant Division Manager; and no prior or subsequent agreement adding to, altering or waiving any of the provisions hereof shall be valid unless in writing and similarly executed."

Inside the warehouse there was a small office and shortly before deceased's death defendant had furnished a large circulating gas heater for installation in the office.

The stove had been installed by an employee (Wingo) of deceased but was unvented. Deceased was on call 24 hours a day in order to handle distribution of defendant's products, and often was particularly busy after midnight. About March 1, 1948, deceased had entered into an arrangement with Vincent Dees whereby this party was to become associated in the business. The night of March 17, 1948 was cold and damp and when the two men entered the office the doors were closed and the stove lighted in order to warm the office. After some time together Dees left the office and went outside to sleep in his car. He awoke about 7 a.m. and returned to the office and found deceased dead on the floor near the stove. The office, which recently had been repainted, was blackened from soot and fumes, the heater flame was very high and deceased was dead from asphyxiation due to gas fumes.

The basis of the claim for damages for wrongful death was that the contract, above quoted, created the relationship of master and servant, by reason of which defendant owed the deceased certain non-delegable duties, including that of furnishing him a reasonably safe place in which to work.

Defendant's amended answer plead the contract, and denied responsibility attached to defendant in any manner, particularly because deceased was an independent contractor. Plaintiff's amended reply specifically denied the defense relied upon by defendant, and alleged deceased actually was an employee, to whom defendant owed the duty of furnishing a safe place in which to work.

Upon the issues presented by the pleadings the case was tried to a jury. After hearing all the evidence and receiving the trial court's instructions, the jury returned a verdict for defendant, upon which the judgment appealed from was rendered. Two propositions are urged as grounds for reversal of this judgment.

No purpose would be served by an extended statement of the mode of operation under the contract, the rights and privileges of the parties or the checks and balances provided for, as revealed by a voluminous record. Both parties relied upon the contract (above quoted) and it is undisputed that deceased operated in accordance with the terms and requirements enumerated therein. The difference between the parties, reflected by the pleadings, the evidence at the trial, and the argument presented here on appeal, lies in the interpretation placed upon the contract by the parties themselves.

Asserting that the very nature of the instrument served to create a master and servant relationship the plaintiff says this contract, and the evidence concerning operations thereunder, can only be held to have established such relationship. The principle argument is that defendant furnished all equipment, including the stove, and that everything used in the business was under defendant's control and for the purpose of furthering defendant's business of distributing its products. Further, since the contract strictly limited deceased's authority, and because his actions in some respects were circumscribed by the company, deceased was nothing more than an employee, although defendant sought to avoid any legal responsibility by exacting from deceased the agreement that he recognize himself as an independent contractor.

Thus plaintiff advances his first contention that the trial court erred in submitting for the jury's determination the construction of an unambiguous, undisputed written contract. We have recognized this as the general rule so often as scarcely to require supporting authority. See White v. McGee, 157 Okl. 204, 11 P.2d 924; Branham v. International Supply Co., 166 Okl. 273, 27 P.2d 354; 57 C.J.S., Master and Servant, § 530. We believe, however, that consideration of one phase of the general rule demonstrates the lack of persuasion in plaintiff's argument. This is the recognized principle that the question of the relationship created by a contract between the parties thereto is to be determined by the trial court only if there is no dispute as to its terms, *or if but one inference can be drawn from the evidence* in regard thereto.

Here, then, is an instance where both parties rely upon a certain contract

and admit the deceased's operations were in conformity with the terms thereof, but contend the contract provisions and evidence of operations thereunder give rise to two diametrically opposed inferences regarding the nature of the relationship created between these parties. The decided cases dealing with the problems are so numerous as to preclude citation, or analysis and comparison. In Ellis & Lewis, Inc., v. Trimble, 177 Okl. 5, 57 P.2d 244, the definitive elements to be considered in determining the question are enumerated. In Sawin v. Nease, 186 Okl. 195, 97 P.2d 27, 30, we said:

"The cases discussing the law of independent contractors are almost without number, and usually an argument is easily obtained on the question whether in a given situation, the person in question is a servant or an independent contractor; but when the numerous judicial pronouncements are reduced to their decisive substance it is found that the hub of the entire controversy is whether the employer had the right to control, or purported or attempted to control, the manner of the doing of the thing, by the alleged servant, which resulted in the injury. If he did have that right, or exercised it regardless of his right to exercise it, then the relationship is that of master and servant, regardless of what any existing written contract may set forth on its face; if he did not have that right, and did not exercise such right, but had only the right to demand specified results, the relationship is that of independent contractor and contractee."

This statement is peculiarly apropos in view of plaintiff's strenuous argument that deceased's authority was limited and, as a practical matter, defendant dictated every action taken since it owned the goods, fixed the prices, and limited sales by imposing terms and conditions thereon. Or, stated otherwise, that the contract merely established a consignment business and left the consignee (deceased) with neither authority nor discretion, so that the relationship in no manner could be considered as other than that of employer and employee.

Under such circumstances it seems clear the trial court properly left for the jury's determination the construction of the written contract relied upon by the parties, and we so hold.

Plaintiff next contends the trial court erred in refusing to instruct the jury that a master and servant relationship existed between deceased and this corporate defendant. Plaintiff requested the trial court to instruct that under the terms and conditions of the contract the relationship of employer and employee was created between the parties. And, further, that the employee (Wingo) who installed the stove was acting as a servant of defendant, so that any negligence upon his part became the negligence of defendant. As authority for this proposition plaintiff relies upon the following decisions; Magnolia Petroleum Co. v. Pierce, 132 Okl. 167, 269 P. 1076, 61 A.L.R. 218; Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390; Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449. Very particular attention is paid the latter case, and it is quoted at length in plaintiff's brief. Therein it appears that the contract was closely analogous to that which we are considering. The Federal court placed its ruling upon the basis that facts, such as are reflected in the defendant's contract here, indicate such a complete control by the company as to be determinative of the question presented. In the body of the opinion, 93 F.2d at page 873, is found the following statement:

"We are in accord with the latter conclusion. It is only by consideration of all of the facts pertaining to the relationship in any case, including the provisions of the contract, the actual conduct of the parties, and the conditions of the business in which they are engaged, that it can be determined whether the distributor is endowed with that control over his own methods and means of doing the work which is the test of an independent contractor. No more definite test has been devised, and the Restatement of Agency itself, section 220(2), merely lists certain matters of fact which, amongst others, may be considered in determining

whether one acting for another is a servant or independent contractor. * * *"

■ Opposed to plaintiff's argument, defendant has presented an exhaustive brief covering this phase of the case, and has included therein numerous decisions from this court, as well as cases from other jurisdictions, dealing with this point. No necessity exists for extended citation and discussion of our previous pronouncements upon this question, since we are convinced the determinative tests may readily be observed in a few of our more recent decisions and the cases cited in the bodies of such opinions. In Ellis & Lewis, Inc., v. Trimble, supra, the tests for determining the relationship were enumerated and applied, and in paragraph 1 of the syllabus we said:

"An 'independent contractor' is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result or product of the work."

In Sawin v. Nease, quoted heretofore, we pointed out that the decisive test for determining whether one party is a servant or an independent contractor is to ascertain whether the employer has the right to control or purports and attempts to control, the mode and manner of doing the work.

Later, in Taylor v. Langley, 188 Okl. 646, 112 P.2d 411, 412, we defined an independent contractor in syllabus 1 as follows:

" " "An 'independent contractor' is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result or product of the work." Southern Construction Co. v. State Industrial Commission, 112 Okl. 248,

240 P. 613.'. Oklahoma Publishing Co. v. Greenlee, 150 Okl. 69, 300 P. 684."

This theory, and the reasoning upon which it is based has been reannounced and applied more recently in World Publishing Co. v. Smith, 195 Okl. 691, 161 P.2d 861; Atlas Life Ins. Co. of Tulsa, v. Foraker, 196 Okl. 389, 165 P.2d 323; Cities Service Oil Co. v. Kindt, 200 Okl. 64, 190 P.2d 1007.

Without specifically enumerating each instance whereby plaintiff insists that the contract provided for defendant's complete authority over and control of deceased's operations of the bulk station, we note only that, in our opinion, the conclusion reached by plaintiff is legally untenable. Despite the contract provisions and the evidence relative to the operations conducted thereunder, plaintiff construes this contract as being an instrument which gave defendant the entire control and supervision of deceased's business, but which was artfully drawn in an effort to escape legal responsibility. If plaintiff's complaints with the contract be considered valid, then the total impossibility of an employer being able to conduct any business enterprise without being forced to assume the relationship of master and servant is readily apparent. The law in no manner considers the legal relationship of employer and independent contractor malum in se, or that where two parties freely enter into such a contractual relationship the employer is to be charged with an attempt to avoid legal responsibility. To accede to plaintiff's argument that the various reservations in the present contract indicate such an attempt when, in fact, defendant maintained the right to control deceased's work, would result only in announcing a rule to the effect that any business contract wherein the employer defines any boundaries of the employment, or demands any specific results, embodies the relationship of master and servant. This we decline to do.

The judgment is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.