PHILLIPS PETROLEUM COMPANY,
Own Risk, Petitioner,

v.

Mary E. BANDY and the State Industrial
Court of the State of Okla-
homa, Respondents.

No. 43310.

Supreme Court of Oklahoma.

Feb. 24, 1970.

Wm. J. Zeman, Lloyd G. Minter, Bartles-ville, Edward J. Fauss, M. Richard Stewart, Oklahoma City, for petitioner.

Gerard K. Donovan, Donovan, Freese & Downing, Tulsa, G. T. Blankenship, Atty. Gen., for respondents.

BERRY, Vice Chief Justice:

This is an original proceeding to review an order of the State Industrial Court en banc, affirming an award allowing claimant, Mary E. Bandy, death benefits for the death of her husband Opie Anderson Bandy. Parties will be referred to as they appeared before the State Industrial Court, and Opie A. Bandy, will be referred to as "deceased."

Respondent contends deceased was an independent contractor and not an employee at the time of the alleged accident.

Deceased and respondent entered into a written consignment contract on April 22, 1957, which was in force at the time of deceased's alleged accident. In substance this contract set forth matters hereafter delineated.

Respondent agreed to deliver petroleum products for resale and distribution in a certain area by deceased who agreed to store and be responsible for products after delivery, promote sale of products and account to respondent for proceeds of sales, at prices to be set by respondent. Products were to be sold for cash, or upon credit approved by respondent, who agreed to pay deceased a commission upon all sales of consigned products. Deceased agreed to make written reports, upon forms furnished by respondent, of sales made and amount of stock on hand at any time re-

quested. Respondent had the right to audit, inventory, or check merchandise in deceased's hands and all records pertaining thereto, at any time. Deceased agreed to account promptly to respondent for all moneys and property in his possession.

Deceased agreed to bear all expenses incident to conduct of his business, furnish trucks and all other equipment required in the operations; hire and pay wages of all employees he might deem necessary for the operation of his business, assume full direction and control over, or responsibility for, all such employees; pay all taxes required in operation of his business; accept full or exclusive liability for payment of any and all provisions, contributions and taxes for workmen's compensation insurance, unemployment insurance and old age pensions, measurable by wages, salaries or other remuneration paid persons employed by deceased.

Deceased could use the Phillips "66" shield, and other advertising symbols to advertise consigned merchandise. Deceased could not use the name "Phillips Petroleum Company" or "hold himself out to the public as an agent or employee" of Phillips, by use of advertising or otherwise. The contract further provided:

"* * * Nothing in this contract contained shall ever be construed as giving consignor any right to control or direct consignee as to the details and means by which consignee performs his obligations hereunder."

The contract was subject to termination by either party upon ten days written notice to the other in advance of the termination date.

When deceased entered into the consignment contract there was filed in the office of the Oklahoma Employment Security Commission an "application for voluntary election" whereby he elected to become an "employer" under the provisions of 40 O.S.1961, § 218(c) (1) of the Act.

When this contract was executed respondent leased deceased a tract of land in Kingfisher together with all buildings, improvements, fixtures and equipment thereon for $7.00 per month. The property was to be used for "handling, distributing, selling and otherwise disposing of petroleum products."

The testimony establishes that deceased and respondent closely adhered to the written contract in the conduct of their business.

Summarized, claimant's testimony showed deceased was a wholesale commission agent, to whom respondent shipped petroleum products on consignment, which were stored in the leased warehouse. The products were sold to service stations and farm customers in the Kingfisher territory, and distributed to purchasers in a tank truck owned by him, the tank being furnished by respondent. Deceased was required to paint the truck with respondent's colors and respondent paid for painting the truck. The truck had a Phillips shield on it, but claimant could not remember whether it also bore Phillips' name.

Deceased reported weekly and monthly sales to respondent, who audited the books every six months. The merchandise stored in the warehouse belonged to respondent. Bill Bockius, a district representative of respondent, called on deceased at least three times each month. Respondent set the prices on the products sold.

Deceased was not required to be on the job at any particular time or during any particular month. If deceased took a vacation someone was hired to care for the business until his return and deceased would merely tell the district representative of his plans. Deceased and respondent jointly paid for advertising.

Deceased bought all furniture and equipment used in the office in the warehouse, paid all utilities and telephone bill, carried public liability insurance on his truck and personally paid the premiums on the policy. Deceased paid social security and income taxes on such income as a self-employed person and respondent did not withhold taxes from the money paid deceased. All

income received by deceased from respondent was on a commission basis.

Bill Bockius testified he was a district sale representative in the Kingfisher territory. The emblem on deceased's truck was a shield with "Phillips" across the top and two sixes in the center. The customary practice was to charge a consignee agent $70.00 for painting his truck. In one instance when the truck was painted the job was defective and respondent waived the charge.

Deceased painted the truck with respondent's colors but could have painted it any color desired. At no time were directions issued to deceased regarding operation of his business, except instructions contained in the written contract. He never told deceased how to operate his business on a day-to-day basis, what hours he should operate, who, or how many people could be employed, how many trucks should be operated, or names of customers he should solicit and call upon.

Deceased never told respondent's representative he had sustained a hernia and never requested medical treatment.

There were no contracts or directives between respondent and deceased other than the written consignment contract, one relating to handling of credit cards, and one relating to the sale of automobile accessories.

In Getman-MacDonald-Summers Drug Co. v. Acosta, 162 Okl. 77, 19 P.2d 149, syllabus 1 states:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result to be accomplished."

In Mills v. R. T. "Bob" Nelson's Painting Service, Okl., 421 P.2d 849, syllabus 1 states the decisive test for determining this issue:

"The decisive test in determining whether one is an employee or an indepen-

dent contractor is the right to control the physical details of the work, and the existence or nonexistence of such right may be established by contract or by conduct of the parties in the premises."

In the present case the relationship of independent contractor is established by the "own written contract" of the parties. In Taylor v. Langley, 188 Okl. 646, 112 P.2d 411, syllabus 2 states:

"Where the contract of the parties creates the relationship of principal and independent contractor, that status must be recognized by this court as a bar, created by the parties themselves, to any recovery under the Workmen's Compensation Law."

See also Oklahoma Publishing Company v. Greenlee, 150 Okl. 69, 300 P. 684.

The contract provisions involved in Keith v. Mid-Continent Pet. Co., Okl., 272 P.2d 371, were nearly identical with provisions of the contract involved here. The contractual provisions relative to supervision, direction and control in performance of duties are, in substance, identical with (paragraph 16) the contract involved here which provides:

"Consignee may use Phillips '66' shield and other advertising symbols in advertising merchandise consigned hereunder, but shall not in any manner use the name 'Phillips Petroleum Company' nor in any other manner, whether by the use of Phillips advertising or otherwise, hold himself out to the public as an agent or employee of Consignor. Nothing in this contract contained shall ever be construed as giving Consignor any right to control or direct Consignee as to the details and means by which Consignee performs his obligations hereunder."

In Keith, supra, we held the written contract created an independent contractor relationship between the parties, and affirmed the judgment of the trial court denying common law liability on the part of Mid-Continent.

The facts involved here also are quite similar to those presented in W. H. Butcher

Packing Co. v. Hixon, 189 Okl. 700, 119 P. 2d 1019. A truck owner entered into an agreement with a packing company to sell, distribute and deliver meat products in a certain territory. He received a 25% commission on all the products sold and delivered, out of which he paid expenses of delivery. Injuries were sustained while claimant was making deliveries from the packing plant to a customer. Holding claimant was an independent contractor, as distinguished from employee of the packing company, and not entitled to receive compensation, we stated the rule in syllabus 2:

"Where, under his agreement with a packing company, respondent's services to said company consist of selling and delivering its products in a certain 'territory' for a percentage of the gross proceeds from sales in that 'territory', out of which he pays all the expenses he incurs in furnishing such services, the company exercises no control or supervision over the manner or methods he employs in performing same; and he is responsible only for the ultimate results thereof; *held,* respondent is an independent contractor rather than an employee of the company, and does not come within the provisions of the Workmen's Compensation Law."

Claimant also urges respondent exercised control over deceased sufficient to establish an employee status, because deceased was required to display the Phillips emblem on his truck. In Coe v. Esau, Okl., 377 P.2d 815, we held that display of trademark signs, by independent dealers of petroleum products, was insufficient to establish such dealer as agent of the gasoline refiner who supplied signs and petroleum products sold by the dealer.

Claimant also argues that respondent urged deceased to attend sales meetings, advertise its products, and supervised his work through calls by its district representative. Examination of this evidence indicates nothing more than respondent's desire to assist in increasing the volume of deceased's business which, under terms of the written contract, would redound to the benefit of both parties.

In Brown v. Saylor, 204 Okl. 154, 228 P.2d 187, we held supervision by the manufacturer, over a jobber's distribution of the product for the mutual benefit of both, did not establish the jobber was the manufacturer's agent. The oral testimony submitted sustains terms of the written contract, and does not remotely indicate the parties' intention either to alter or change the contract terms or deviate from its provisions.

Claimant alleges that the deceased was injured on November 15, 1965. He lived until July 6, 1966. During this period deceased neither filed claim for compensation nor requested medical treatment, but secured his own medical treatment. These factors strongly indicate deceased personally considered his relationship with respondent was that of independent contractor and not that of an employee. In Herron Lumber Co. v. Horn, Okl., 446 P.2d 53, we held:

"Where the relationship of employer and employee forms a disputed issue on review of a decision made by the State Industrial Court, the Supreme Court will weigh the evidence contained in the record and undertake an independent evaluation of both law and facts to establish the existence or absence of such relation."

We have examined the evidence presented at the trial. The written contract executed by the parties, supported by oral testimony of witnesses, clearly establishes that at the time of injury deceased was an independent contractor and not an employee of respondent.

Award vacated.

IRWIN, C. J., and DAVISON, WILLIAMS, JACKSON, and HODGES, JJ., concur.

LAVENDER, J., concurs in result.