Clifford Stanley CANNAN, Petitioner,

v.

Phil P. DRANE, Western Casualty & Surety Company, and the State Industrial Court, Respondents.

No. 43928.

Supreme Court of Oklahoma.

Sept. 29, 1970.

Rehearing Denied Dec. 22, 1970.

V. Craig Blackstock, Blackstock, Joyce & Pollard, Tulsa, for petitioner.

Philip N. Landa, Rhodes, Hieronymus, Holloway & Wilson, Tulsa, G. T. Blankenship, Atty. Gen., for respondents.

LAVENDER, Justice.

Petitioner, Clifford Stanley Cannan, Claimant below, seeks review of an order of the State Industrial Court denying him workmen's compensation benefits under the provisions of the Oklahoma Workmen's Compensation Act. Parties will be referred to as they appeared before the State Industrial Court.

The State Industrial Court in its order entered on December 10, 1969, denying the claim of the claimant found:

"That at the time of the injury complained of herein, on or about December 14, 1966, claimant was an independent contractor and not an employee of the respondent herein, Phil B. Drane; and therefore, this Court has no jurisdiction to hear claimant's claim and make a determination of the nature and extent of claimant's disability, if any, as a result of an injury alleged on or about December 14, 1966.

"It is therefore ordered that claimant's claim for compensation is denied."

Claimant contends that the order of the State Industrial Court "is against the clear weight of the evidence and contrary to law."

Claimant Cannan is the son-in-law of the respondent, Drane. Claimant and respondent on March 1, 1963, entered into a written operating agreement whereby claimant agreed to recommend oil properties for purchase by respondent and to act as respondent's agent in securing oil properties and supervising the operations thereon. Claimant was to receive three-eighths of the net income from said properties after respondent had been reimbursed for the purchase cost. The agreement provided for the assignment to the claimant of his interest in said properties after certain conditions had been met. No charges were to be made by the parties for their personal services until all costs and expenditures incurred in connection with the acquiring of said properties had been paid except the parties were to be paid "for personal expenditures, such as hotel bills, meals, automobile, bookkeeping and office expenses." Respondent retained "the bookkeeping and operation of all" properties. One oil property referred to in the agreement is the Peters and Pennington Leases, Neosho

County, Kansas. The agreement contained a provision as follows:

"It is agreed that this agreement and any written addenda or supplement thereto signed by both parties shall constitute the sole and only agreement between the parties hereto, and that this agreement may not be superseded, canceled, modified, enlarged, restricted, changed or altered in any manner except by written agreement signed by both parties hereto."

On November 1, 1963, claimant and respondent entered into a written agreement, described as a "Supervisory and Labor Agreement with *Independent Contractor.*" The agreement relates to the operation of certain oil properties including the "Peters & Pennington Leases in Neosho County, Kansas." The pertinent portions of said agreement are as follows:

"WHEREAS, *Drane is desirous of obtaining the services of an independent contractor to supervise the operations and supervise pumping* and water flooding work on oil wells on the leases, and to obtain new leases to be operated in conjunction with previously acquired leases.

"WHEREAS, Stanley S. Cannan of Chanute, Kansas, hereinafter referred to as "Contractor," *has agreed to perform such services as an independent contractor*:

"NOW, THEREFORE, in consideration of the premises and of the amounts to be paid Contractor as hereinafter specified, the parties agree as follows:

"1. Contractor shall take a daily survey of all leases and watch the operation with the pumpers and report the results thereof on forms provided by Drane, mailing all forms and bills for material and run tickets to Drane's office. Contractor shall supervise all repairs and installation of equipment on the leases and maintain the areas immediately surrounding the wells and tanks in a fire safe and presentable condition. Contractor will see that all waste oil and salt water is either disposed of or fenced so that cattle on the farms have no access to these commodities. All major repairs and all requirements for operating supplies shall be referred to Drane's office. The Contractor will be expected to supervise all pumpers, outside contractors and casual laborers working on the leases to the end that their work is satisfactorily completed in as economical and workmanlike manner as possible.

"2. Contractor shall perform his duties hereunder without supervision by Drane except as the results and *shall in all things act as an independent contractor.* The standard of performance hereunder shall be the manner and condition in which such leases and production are maintained at all times. *No regular hours or length of time shall be required for performance hereunder,* but Contractor shall spend so much time as is necessary to accomplish the results called for by this agreement.

"3. For all services performed hereunder, Contractor shall receive from Drane monthly the sum of $900.00 plus expenses. Contractor shall mail his invoice for such services at the end of each calendar month to the office named above, whereupon within 10 days after receipt thereof, such invoice shall be paid by check mailed to the address stated immediately following Contractor's signature hereto.

"4. This Agreement may be terminated by either party upon 10 days written notice to the other party mailed to the addresses indicated below." (Emphasis ours.)

On March 12, 1966, claimant and respondent entered into a supplement contract to the operating agreement executed on March 1, 1963. The supplemental contract refers to supplemental agreements entered into April 21, 1964, and May 15, 1964, not shown in the record. The supplemental contract executed March 12, 1966, merged into and made a part of the operating agreement executed on March 1, 1963, and the supplements executed on April 21, 1964, and May 15, 1964.

Claimant testified that under the operating contract dated March 1, 1963, he took care of the oil properties. He employed pumpers to pump the leases. He made arrangements for servicing the oil wells. He "had pretty much a free hand" in incurring bills for the operations not in excess of $40.00 or $50.00.

He testified that under the provisions of the "Supervisory and Labor Agreement with Independent Contractor" dated November 1, 1963, he was paid two or three monthly checks of $900.00 each; that then "we cancelled. This was cancelled out;" that the agreement was cancelled by his signature at the request of Mr. Drane; that while operating under both of these agreements "he did (not) perform as a pumper for Mr. Drane;" that about June 1, 1966, at the request of Drane he took over the pumping duties; that he was supposed to receive $120.00 per month for pumping one lease and $50.00 per month for pumping another lease. The monthly rental on the house he lived in at Chanute, Kansas, was also paid by Drane.

Claimant on December 14, 1966, sustained injuries in an automobile accident involving an automobile driven by him. The accident occurred near Collinsville, Oklahoma. Claimant was on a return trip to Chanute, Kansas, from Tulsa, Oklahoma, where he had conferred with the respondent, Drane. He testified that the sole purpose of the trip was "to discuss some monthly bills with Mr. Drane;" that he tried to go to Tulsa once a month "to consult with Mr. Drane about the operations;" that while in Tulsa he received a check dated December 16, 1966, in the amount of $100.00 for pumping operations. The designation on the check is for "pumping & supervision." Respondent Drane testified that the check was postdated because of his being "short of money" and this was done on more than one occasion. Drane testified that the purpose of claimant's trip to Tulsa was to furnish respondent with "general information about the leases, what we were doing up there, whether we were to drill some more wells or not."

Respondent testified that he told his bookkeeper to buy workmen's compensation insurance covering his employees but at first he did not include claimant Cannan as he was not an employee but an independent contractor; that he later told his bookkeeper to include Cannan. The bookkeeper was in the courtroom during the trial, but did not testify. An auditor for the Western Casualty and Surety Company identified an audit made of the Phil B. Drane account covering a period of time from October 8, 1965, to October 8, 1966. He testified that no payroll was expended during that period of time; that he received the information for making the audit from the office of Mr. Chaffin, bookkeeper for the respondent Phil P. Drane.

Respondent testified that claimant was not working under the written contracts at the time of the accident as "we cancelled them." He testified he has no written evidence of the termination of the contract unless it is shown in the contracts submitted in evidence. There is no written cancellation shown in the written documents submitted in evidence. The "operating agreement" specifically provides that it "may not be superseded, canceled, modified, enlarged, restricted, changed or altered in any manner except by written agreement signed by both parties hereto." The "Supervisory and Labor Agreement with Independent Contractor" specifically provides that "this agreement may be terminated by either party upon 10 days written notice to the other party."

The evidence shown in the record establishes that at the time he sustained the accident, claimant was not working as a pumper or engaged in hazardous work within the purview of 85 O.S.1961 § 1 et seq. On the contrary, the evidence establishes that the purpose of the trip to Tulsa was to discuss the payment of bills, furnish information about the leases, the drilling of additional oil wells, and other business af-

fairs, none of which was related to the pumping of oil wells.

The evidence also establishes that the payments made to the claimant were not included as payroll items in calculation of premiums on the workmen's compensation policy or that claimant was listed as an employee on said policy.

■ The question of whether the claimant is an independent contractor or employee of the respondent is to be determined by the formal contract of the parties and the conduct of each party toward the other. Phillips Petroleum Company v. Bandy (1970), Okl., 466 P.2d 636; C & H Transportation Co. v. McLaughlin (1967), Okl., 434 P.2d 229; Mills v. R. T. "Bob" Nelson's Painting Service (1966), Okl., 421 P.2d 849.

At the inception of the relationship between the parties on March 1, 1963, they entered into a written agreement whereby claimant was to receive as sole compensation for his services in procuring oil leases for the respondent a three-eighths interest in the leases procured and the income therefrom. Claimant agreed to supervise the operation of the leases. The contract could be changed only by signed written agreement of the parties. The parties on November 1, 1963, entered into a second contract whereby the respondent secured the services of claimant as an *independent contractor* to supervise the operation of the leases and supervise the pumping and the water flooding work of the oil wells on the leases. The contract was subject to termination by either party upon 10 days written notice to the other.

The record is barren of any written notice or agreement entered into by the parties terminating either of the contracts. Both parties in their testimony vaguely refer to the signing of some type of agreement but none is shown in the record. Claimant testified that the contract dated November 1, 1963, was cancelled on June 1, 1966, when he commenced working for respondent as a pumper. He indicates that

he was to receive a salary of about $170.00 per month. Respondent testified that both contracts were cancelled.

■ The method of payment made by the respondent to the claimant for his services, while not a controlling factor, is a factor to be considered in determining the relationship of the parties. C & H Transportation Company v. McLaughlin, supra. Fourteen checks were submitted in evidence covering payments made by respondent to the claimant during the year 1966. They are as follows: Jan. 20, 1966, in the amount of $200.00 for "Labor on lease;" Mar. 17, 1966, in the amount of $1,000.00, for "Labor on leases;" Apr. 12, 1966, in the amount of $75.00 for "Partial payment pumping leases;" July 1, 1966, in the amount of $150.00, for "Pumping of leases;" Oct. 1, 1966, in the amount of $200.00 for "Pumping expense on leases;" Oct 7, 1966, in the amount of $200.00 for "Pumping expense on leases;" Dec. 16, 1966, in the amount of $100.00 for "Pumping and supervision leases." The checks are issued for irregular amounts and on indefinite dates, not usually consistent with the method an employer would follow in paying the salary of an employee. On the other hand, they are consistent with payments respondent would be expected to make to the claimant, when funds were available and due under his agreement to supervise the operation of the leases. One check in the amount of $1,000.00 was issued on March 17, 1966. He testified such check "may have been an accumulation of what I was supposed to get as a pumping fee." Claimant, according to his own testimony, did not commence working as a pumper until June 1, 1966, about three months after the check was issued.

■ Respondent did not deduct any withholding or social security taxes from payments made to the claimant. Standing alone, the failure to deduct such taxes is not decisive. Herron Lumber Company v. Horn (1968), Okl., 446 P.2d 53. It may be considered, however, along with other

factors in support of the contention that claimant was an independent contractor.

Claimant did not request the respondent to furnish him with medical treatment at the time the accident occurred. At the time he entered the hospital, he stated in his "patient statement" that he is a geologist and is "self-employed." He did not furnish official notice of the accident until he filed his Form 3 on December 12, 1967, two days before the claim would have been barred by the one year Statute of Limitation, 85 O.S.1961 § 43. These are factors strongly indicating that claimant considered his relationship with the respondent to be that of independent contractor and not that of employee. Phillips Petroleum Company v. Bandy, supra.

In addition to the services claimant performed for respondent he sometimes served as an "independent consultant" to other oil operators for which he received compensation. During the year 1966, and while he was pumping the oil leases of the respondent, he was also employed by other oil operators as an "independent consultant" and managed the operation of their oil leases.

We have reviewed and weighed the evidence contained in the record as required by prior decisions of this Court. Phillips Petroleum Company v. Bandy, supra; Herron Lumber Company v. Horn, supra.

■ The evidence when closely analyzed clearly establishes the relationship of the claimant with the respondent at the time the accident occurred to be not that of employee.

Order of the State Industrial Court sustained.

IRWIN, C. J., BERRY, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, JACKSON and HODGES, JJ., concur.

McINERNEY, J., did not participate.