Richard Wayne MAHAN, Petitioner,

v.

NTC OF AMERICA and Fireman's Fund Indemnity Company, Respondents.

No. 73254.

Supreme Court of Oklahoma.

Jan. 21, 1992.

Rehearing Denied July 16, 1992.

Wilson Jones Frasier & Frasier, Tulsa, for petitioner.

Paul V. McGivern, Jr. Daniel L. Crawford, McGivern, Scott, Gilliard, McGivern & Robinson, Tulsa, for respondents.

SUMMERS, Justice:

The question is whether injured claimant was an "employee" protected by the Oklahoma Workers' Compensation Act. Upon review of the record consistent with our duty to adjudicate a jurisdictional fact, we hold that he was not.

Mahan had a truck. He entered into a leasing agreement with NTC of America, Inc. Under the terms of the lease, Mahan agreed to carry goods for NTC from place to place in exchange for a percentage of the gross profit realized from the goods. Mahan was charged with the duty of maintenance of the truck, fueling of the truck, and providing a limited amount of insurance. The contract stated that NTC had exclusive control over the leased equipment. However, the truck remained in the possession of Mahan. The general procedure prior to hauling a load of goods was notification to Mahan as to where and when he should pick up and deliver the load. Mahan could then accept or refuse the job.

On September 26, 1985, Mahan suffered an injury to his eye while repairing the truck during a trip on which he was carrying goods for NTC. The injury required surgery and repeated physician's consultations. The parties stipulated that Mahan timely notified NTC of the injury.

After a hearing the trial judge determined that Mahan was acting as an independent contractor when the injury occurred, and thus was not entitled to workers' compensation benefits. Mahan appealed to the three-judge panel, claiming that the trial court applied the incorrect statute. The panel sent the matter back for reconsideration under what it considered to be the correct statute, and the trial judge again refused benefits.[1] Mahan then appealed and the Court of Appeals reversed, finding that Mahan was an employee at the time of his injury. NTC petitioned for certiorari. We granted certiorari on November 6, 1990, and now reinstate the order of the Workers' Compensation Court.

■ Initially, we note that in workers' compensation cases we are not bound by the lower court's determination of jurisdictional facts. *Swyden Constr. Co. v. White*, 383 P.2d 674, 676 (Okla.1963); *McKeever Drilling Co. v. Egbert*, 170 Okl. 259, 40 P.2d 32, 34–35 (1934). The question of whether or not a claimant is an employee has long been recognized as a jurisdictional fact, and therefore this Court will review the record to make an independent finding on that issue. *Leonhardt Enterprises v. Houseman*, 562 P.2d 515, 517 (Okla.1977); *Smith Brothers Road Construction Co. v. Palmer*, 389 P.2d 495 (Okl.1964).

■ The determination of whether an individual is an employee or an independent contractor turns on the particular facts of the case and on the contract between the parties. *Cannan v. Drane*, 477 P.2d 687, 691 (Okla.1970). Generally, an independent contractor is one who performs a service for another according to his or her own methods, free from control and direction in all matters connected with the performance of the task, except as to the result. *Flick v. Crouch*, 434 P.2d 256 (Okla.1967). An employee, on the other hand, is subject to the employer's direction and control as to the details of the task. *See Parkhill Truck Co. v. Brewer*, 354 P.2d 774, 776 (Okla.1960).

■ We look first to the formal contract between the parties. As in *Cannan*, the leasing agreement stated that NTC wanted to "conduct a portion of its transportation business by use of equipment owned and operated *by independent contractors....*" (Emphasis Added) While the agreement expressly provided that the leased equipment was under the exclusive control of NTC, it also provided that Mahan was to direct and control the driver of the truck,

---

**1.** At the time of Mahan's injury 85 O.S.1981 § 3 did not specifically exclude an owner/operator of a truck which was leased to a carrier. On November 1, 1986, the statute was amended to specifically exclude from the definition of "employee" any "person, commonly referred to as an owner-operator, who owns or leases a truck-tractor or truck for hire, if the owner-operator actually operates the truck-tractor or truck and if the person contracting with the owner-operator is not the lessor of the truck-tractor or truck."

was to provide fuel and maintenance for the truck, and was to pay all operating expenses. He was to be paid a percent of the gross revenue from the load he delivered. Finally, the agreement specifically stated that the "parties intend to create by the Agreement a 'contractor-independent contractor' relationship and not an 'employer-employee' relationship...."

As for the facts surrounding the relationship, NTC directed where and when the loads were to be delivered. Other than this, Mahan was permitted to make decisions regarding the details of the work. He was paid as an independent contractor; NTC did not withhold taxes from his payments. Mahan also testified that he was free to accept other jobs during the time the lease was in effect.

Although mode of payment is not determinative, it is a factor to be considered. *Cannan*, 477 P.2d at 691; *Parkhill Truck Co.*, 354 P.2d at 776. The intent of the parties is also important. *Cannan*, 477 P.2d at 691. Here, all aspects of the relationship point towards Mahan's status as being an independent contractor. The express contract language, the mode of payment, and the lack of control and supervision by NTC all indicate that the parties created a contractor-independent contractor relationship.

In *Smith Brothers Road Constr. v. Palmer, supra,* we faced a similar situation. There claimant was hired to haul loads of gravel from one pit to another. Claimant either owned his truck or it was owned by his son. Claimant paid for the fuel and maintenance of the truck. He was paid on a per load basis. He was free from supervision except as to the ultimate result. We held the claimant to be an independent contractor. We find *Smith Brothers* indistinguishable from the case at bar.

See also *Miller v. Steelman Contracting Co.*, 282 P.2d 740 (Okla.1955).

We therefore vacate the opinion of the Court of Appeals and sustain the order of the Workers' Compensation Court denying benefits.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE and KAUGER, JJ., concur.

OPALA, Chief Justice, concurring.

The court has granted certiorari to review certain "jurisdictional facts" in an appeal from the Workers' Compensation Court. Today's opinion concludes that the claimant, when injured, did not stand in an employment relationship to the respondent. While I join in today's holding, I write separately to explain the conceptual and historical underpinnings for Oklahoma's appellate *de novo* examination of compensation claimant's employment status and to reaffirm that review standard's earlier birth and current dimension as a state constitutional-law norm.

I

STATE FUNDAMENTAL LAW MANDATES *DE NOVO* APPELLATE REVIEW OF DISPUTED EMPLOYMENT STATUS AS A "JURISDICTIONAL QUESTION"

This case presents a factual dispute over the status of a compensation claimant *qua* employee of the respondent-entity. This court has a firm and unswerving commitment to that jurisprudence of our state which views contested employment as a "jurisdictional question" in a claim[1] before the Workers' Compensation Court.[2] While originally rooted in federal constitutional pronouncements,[3] this principle has since been woven into our own fundamental-law fabric.[4] It mandates *de novo* appellate re-

---

**1.** *See* the provisions of the Workers' Compensation Act, 85 O.S.1981 §§ 1 et seq.

**2.** *Brown v. Burkett,* Okl., 755 P.2d 650, 651 (1988).

**3.** *Ohio Valley Water Co. v. Ben Avon Borough,* 253 U.S. 287, 40 S.Ct. 527, 528–529, 64 L.Ed. 908 (1920); *Crowell v. Benson,* 285 U.S. 22, 56, 52 S.Ct. 285, 294, 76 L.Ed. 598 (1931).

**4.** *See McKeever v. Egbert,* 170 Okl. 259, 40 P.2d 32, 35 (1935), where we held that our due process clause in Art. 2 § 7, Okl. Const., has a definitional sweep that is coextensive with its federal counterpart (5th and 14th Amendments,

view of a worker's employment status in contest.[5] This means that corrective relief is accorded in appellate courts by plenary, independent, nondeferential re-examination of record facts.[6] *The de novo standard of review is utterly nondeferential because it ascribes absolutely no weight to a lower tribunal's findings.*[7] The rationale for the principle is that employment status presents no *ordinary facts.*[8] It tenders for review facts that determine subject matter cognizance of the tribunal whence the case came.[9]

Federal jurisprudence calls for mandatory *de novo* judicial review of *all* jurisdictional fact issues tendered before an administrative agency. This norm stands as a command of the federal due process.[10] Workers' compensation law initially came to Oklahoma as a system of administrative adjudication.[11] It was then that *de novo* appellate review of jurisdictional facts tendered in a compensation claim came to be infused into the body of our own state due process clause.[12] The principle continues in effect today and its force remains undimin-

U.S. Const.). The terms of Art. 2 § 7, Okl. Const., provide: "No person shall be deprived of life, liberty, or property, without due process of law." *See also Black v. Ball Janitorial Service, Inc.,* Okl., 730 P.2d 510, 513 n. 9 (1986); *Harry R. Carlile Trust v. Cotton Petroleum,* Okl., 732 P.2d 438, 443 n. 25 (1986).

5. In a *de novo* appellate review the court exercises its judgment *independently and without deference* to the findings of fact or to the legal rulings made below. *Johnson v. Rodgers,* 756 F.2d 79, 81 (10th Cir.1985); *see also State ex rel. Oklahoma Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 630, 631 n. 3 (1990) (Opala, V.C.J., dissenting).

6. In *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), the Court holds that intermediate appellate courts in the federal system must review *de novo* state-law determinations of the U.S. district courts. There, *de novo* appellate review is variously described as "plenary", "independent" or "nondeferential". The Court observes that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable." *Salve, supra,* —— U.S. at ——, 111 S.Ct. at 1224. *See Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir.1987), where the court gave *de novo* review in a summary judgment case where a purely legal determination was involved; *see also Vanguard Production, Inc. v. Martin,* 894 F.2d 375, 377 (10th Cir.1990), a legal malpractice action in which the court reviewed *de novo* the district court's conclusion of law drawn in its summary judgment process.

7. *Salve Regina College v. Russell, supra* note 6, —— U.S. at ——, 111 S.Ct. at 1224; *Johnson v. Rodgers, supra* note 5 at 81; *State ex rel. Oklahoma Bar Ass'n v. Perceful, supra* note 5 at 631 n. 3 (Opala, V.C.J., dissenting).

8. Ordinary facts are those which are "necessary in the routine of administering the relief" or "the propriety of provision for administrative determinations." *McKeever Drilling Co. v. Egbert, supra* note 4 at 40 P.2d 35, quoting *Crowell v. Benson, supra* note 3, 285 U.S. at 56, 52 S.Ct. at 294. In *McKeever supra* note 4 at 40 P.2d 36,

the court announced that in reviewing an award of the then compensation commission, it will not accept as conclusive that entity's findings of fact upon a jurisdictional question; rather, it will weigh the evidence and make its own "independent determination of fact" upon the record submitted.

9. In *Brown v. Burkett, supra* note 2 at 651 n. 6, we stated that: "Because the error sought to be corrected is one from resolution of a *jurisdictional* fact issue, no deferential standard of review may be accorded here to the trial tribunal's finding of employment status. On non-jurisdictional fact issues we accept as binding the trial tribunal findings, if they are supported by any competent evidence."

10. *Ohio Valley Water Co. v. Ben Avon Borough, supra* note 3, 253 U.S. at 289–291, 40 S.Ct. at 528–529. There, the Court holds that as a matter of due process binding upon the states, the appellate court must give judicial review *de novo* for appellate resolution of all jurisdictional fact issues coming from administrative agencies. *See also Crowell v. Benson, supra* note 3, a case arising under the Longshoremen's and Harbor Workers' Compensation Act which authorized the administrative body to award compensation (a) when the master-servant relationship existed and (b) when the injury was received upon navigable U.S. waters. There, the Court said: *"A different question is presented where the determinations of fact are fundamental or 'jurisdictional' in the sense that their existence is a condition precedent to the operation of the statutory scheme."* (Emphasis mine.)

11. Compensation law claims were formerly within the original cognizance of the State Industrial Commission, 85 O.S.1951 § 69.1; under the institutional scheme now in force, these claims are entertained by the Workers' Compensation Court, 85 O.S.Supp.1990 § 1.2; *see* 85 O.S.Supp.1959 § 91 for the statute transforming the State Industrial Commission into the State Industrial Court.

12. *McKeever Drilling Co. v. Egbert, supra* note 4.

ished even though the administration of present-date compensation regime has long passed from an administrative agency to a judicial institution.[13]

## II

### THIS COURT'S COMMON–LAW CERTIORARI IS INVOCABLE TO REVIEW JURISDICTIONAL FACT ISSUES

Although in this case the employer timely invoked our certiorari cognizance under Art. 7 § 5, Okl. Const.,[14] common-law certiorari, whose authority derives from Art. 7 § 4, Okl. Const.,[15] *is also available* to review the tendered jurisdictional issue resolved today—i.e., whether this claimant stood in an employment status *vis-a-vis* the party he had haled into court.[16] If appellate remedy be absent or ineffective, common-law certiorari generally lies in this court for review of facts bearing on subject-matter jurisdiction of the lower tribunal. In short, the writ is invocable to determine the question whether the lower court stayed within or exceeded its cognizance.[17]

## III

### RULES 3.13 A[18] and 3.14 F,[19] WHICH WITHHOLD THE EXERCISE OF § 5 CERTIORARI REVIEW FROM CASES TENDERING *SOLELY* DISPUTED ISSUES OF FACT, DO NOT BAR OUR RE-EXAMINATION OF JURISDICTIONAL FACTS IN THIS CASE

Both the function *of* and the range of inquiry *in* common-law certiorari are estab-

---

**13.** *See supra* note 11.

**14.** The pertinent terms of Art. 7 § 5, Okl. Const., are:

"* * * When the intermediate appellate courts acquire jurisdiction in any cause and make final disposition of the same, *such disposition shall be final and there shall be no further right of appeal except for issuance of a writ of certiorari* ordered by a majority of the Supreme Court which may affirm, modify or make such other changes in said decision as it deems proper...." (Emphasis added.)

**15.** The terms of Art. 7 § 4, Okl. Const., provide in pertinent part:

"* * * The original jurisdiction of the Supreme Court *shall extend to a general superintending control* over all inferior courts.... The Supreme Court ... *shall have power to issue,* hear and determine writs of ... *certiorari....*" (Emphasis added.)

**16.** For the difference between common-law and § 5 certiorari, *see Ingram v. Oneok, Inc.,* Okl., 775 P.2d 810, 812 (1989).

**17.** Common-law certiorari is available for review of jurisdictional questions. *Petitioners of School Dist. No. 9, Caddo County v. Jones,* 193 Okl. 9, 140 P.2d 922, 923 (1943); *Application of State Board of Medical Examiners,* 201 Okl. 365, 206 P.2d 211, 214 (1949); *Goodin v. Brown,* Okl., 301 P.2d 652, 654–655 (1956); *Board of Education of Ind. Sch. Dist. No. 20 v. Adams,* Okl., 465 P.2d 464, 466 (1970).

**18.** The terms of Rule 3.13 A, Rules On Practice And Procedure In The Court of Appeals and On Certiorari to that Court, 12 O.S.Supp.1991, Ch. 15, App. 3, provide in pertinent part:

"A. A review of an opinion of the Court of Appeals in the Supreme Court on writ of certiorari as provided in 20 O.S.1971, § 30.1 is a matter of sound judicial discretion and will be granted only when there are special and important reasons and a majority of the justices direct that certiorari be granted. The following, while neither controlling nor fully measuring the Supreme Court's discretion, indicate the character of reasons which will be considered:

(1) Where the Court of Appeals has decided a question of substance not heretofore determined by this court;

(2) Where the Court of Appeals has decided a question of substance in a way probably not in accord with applicable decisions of this court or the Supreme Court of the United States;

(3) Where a division of the Court of Appeals has rendered a decision in conflict with the decision of another division of that court;

(4) Where the Court of Appeals has so far departed from the accepted and usual course of judicial proceedings or so far sanctioned such procedure by a trial court as to call for the exercise of this court's power of supervision."

**19.** The terms of Rule 3.14 F, Rules On Practice And Procedure In The Court of Appeals and On Certiorari to that Court, 12 O.S.Supp.1987, Ch. 15, App. 3, provide in pertinent part:

"The petition, answer and reply *shall not reach the merits of the appeal* but rather pertain to reasons Supreme Court should review the decision of the Court of Appeals. The only matters considered on certiorari are the petition for certiorari and the response to the petition for certiorari. Briefs on appeal and

lished by our caselaw,[20] whereas the grounds for invocation of § 5 certiorari are rule-governed.[21] *The legislature does not prescribe either the grounds for or the range* of permissible inquiry in § 5 statutory certiorari to the Court of Appeals.

Rule 3.14 F specifically excludes from certiorari cognizance under § 5 the "merits of the appeal." Rule 3.13 A lists the *reasons* that may be considered for certiorari power's exercise under that section. These rules, when construed together, clearly negate the notion that a § 5 writ could be granted to re-test the sufficiency of facts that underlie a nisi prius decision (either judgment or decree). Our action today—allowing § 5 review to re-probe *jurisdictional facts* in a compensation claim—clearly does not offend the rule-governed restrictions on the availability of § 5 certiorari process. *Jurisdictional facts are not "facts on the merits" but rather facts determining the authority of the lower tribunal to act in a case.*

## SUMMARY

When a compensation claimant's employee status stood in an appellate contest, this court may, in a § 5 certiorari proceeding, review the record *de novo* for a final settlement of the critical legal relationship in existence between the parties litigant when the injury occurred. In post-appeal stages, employment status of a compensation claimant may be re-examined *de novo* either in the framework of a timely commenced certiorari proceeding under § 5 or by common-law certiorari. For the issuance of the latter writ our power to grant corrective relief is drawn from § 4.[22]

---

briefs in support of petition for rehearing are not considered on certiorari." (Emphasis added.)

**20.** *See* e.g. caselaw cited in *supra* note 17.

**21.** *See* Rules On Practice And Procedure In The Court Of Appeals And On Certiorari To That Court, 12 O.S.1981, Ch. 15, App. 3.

**22.** For an explanation of the two distinct writs which parade under the same verbal garb, *see Ingram v. Oneok, Inc., supra* note 16.