**James Randall DUNCAN, Petitioner,**

v.

**POWERS IMPORTS and Continental Insurance and the Workers' Compensation Court, Respondents.**

No. 82474.

Supreme Court of Oklahoma.

Nov. 15, 1994.

Mark Lowery, Oklahoma City, for petitioner.

R. Dale Kimsey and Roger Reneau, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for respondent.

## OPINION

WATT, Justice.

The issue here is whether Claimant, James Randall Duncan, was an employee of Respondent, Powers Imports, or an independent contractor. Following a hearing to determine its jurisdiction, the trial court found that Duncan was an independent contractor. Consequently, the trial court held that it lacked jurisdiction to award workers' compensation benefits to Duncan. The Court of Appeals reversed on the ground that Duncan was Powers's employee.

 Whether a claimant seeking workers' compensation benefits is an employee or an independent contractor is a jurisdictional fact, which we must decide independently based upon a *de novo* review of the record. We exercise our judgment "independently, and without deference to the findings of fact or to the legal rulings made below." *Mahan v. NTC of America*, 832 P.2d 805, 808 (Okla. 1992). After analyzing the record in this appeal we find that Duncan was an independent contractor, not Powers's employee.

## FACTS

In September 1992, Duncan responded to a classified advertisement placed by Powers for "distributors." After a Powers representative had evaluated Duncan for a day, Powers and Duncan made an "Independent Distributor Agreement." The Agreement recited that Powers, the "Corporation," was "engaged in the sale of consumer products," and that Duncan, the "Distributor," was "interested in selling the Products on a consignment basis to consumers." The parties agreed that "the Distributor is totally independent and free of control to sell the Products the Distributor selects wherever, whenever, in any manner and for any price." No sales territory was assigned to Duncan; he was expressly allowed to "sell the Products during any hours he may choose." The Agreement further provided that "the Distributor shall not be required to attend sales meetings," and gave Duncan "sole discretion in establishing his prices."

The Agreement also said, "the Distributor understands that as an independent contractor, he *shall have no claims against the Corporation for* wages, unemployment, *workers' compensation* or disability benefits." [Emphasis added.] The Agreement gave Duncan the right to sell the "same or similar products of another company," and to hold "outside employment of any kind during the term of this agreement or anytime thereafter."

Powers made the Products available to Duncan, and its other distributors, each morning sometime before eight in the morning and asked the distributors to return unsold Products at about seven in the evening of the same day. Duncan claims that this made him an employee. The Agreement, however, expressly provided that "the Corporation may designate a time period during the Corporation's normal business hours when the Distributor can pick-up and/or return Products to the Corporation." The "Products" were relatively inexpensive items such as solar radios and toys.

Duncan claimed that distributors were "yelled at," if they missed sales meetings, sold merchandise for more than Powers's suggested prices, or failed to work Saturdays. This claim, however, was denied by Powers's representative at the hearing, and is contrary to the express terms of the Agreement. Duncan admitted that "if you missed a couple [of sales meetings] it was no big deal." Duncan furnished his own car for his work. Duncan does not claim that Powers attempted to exercise supervision or control over Duncan's sales activities. In any event, the Agreement provided that Duncan would be "free of control" to sell Powers's Products.

On March 15, 1993, Duncan was injured in an automobile accident. The accident occurred when the car in which Duncan was riding overturned after the driver, another Powers distributor, lost control.

## DISCUSSION

 In *Page v. Hardy*, 334 P.2d 782 (Okla. 1958) we identified eleven factors that should

be considered in deciding whether a person is an independent contractor or employee. We recently applied the *Page* factors in *Coleman v. J.C. Penney Co.*, 848 P.2d 1158 (Okla. 1993).[1] In *Coleman,* we noted that "no one factor is controlling, and the relationship must be based on the set of facts peculiar to the case." Id. at 1160.

We now apply the *Page* factors to this case:

(a) What was the nature of the contract between the parties? Was it written or oral? There was a written agreement, under the terms of which the parties expressly agreed that Duncan was an independent contractor.

(b) What was the degree of control which, by the agreement, the employer may exercise on the details of the work? What independence was enjoyed by the contractor or agent? Powers exercised little or no control over the manner in which Duncan did his work, and the Agreement so stated. From the time Duncan left in the morning, until he returned in the evening, he was on his own.

(c) Was the one employed engaged in a distinct occupation or business? Did he carry on such occupation or business for others? While Duncan did not sell for others during his brief association with Powers, the Agreement expressly allowed him to do so, and to hold any other employment.

(d) Was the work of a kind that is usually done under the direction of the employer or by a specialist without supervision? Outside salesmen doing the sort of work Duncan did are often unsupervised, as was Duncan.

(e) What skill was required in the particular occupation? Duncan's success depended entirely upon his personal skills as a salesman.

He relied entirely upon his own initiative and ability to sell Powers's Products.

(f) Did the employer or the workman supply the instrumentalities, tools and the place of work for the person doing the work? Duncan supplied his own automobile for transportation and was solely responsible for choosing an area within which to seek sales.

(g) What is the length of time for which the person is employed? Duncan had been a distributor of Powers's Products for six months at the time of his injury.

(h) Was the method of payment based on time or was it by the job? Duncan's compensation was based entirely upon the Products that he sold, and the amounts he sold them for. Duncan was not compensated on a time basis.

(i) Was the work a part of the regular business of the employer? While Duncan's work was part of Powers's regular business, it was of a type that is often performed by independent contractors. See *Phillips Petroleum Co. v. Bandy,* 466 P.2d 636 (Okla.1970), in which we found that a wholesale commission agent who sold petroleum products consigned to him by an oil company was an independent contractor.

(j) Did the parties believe they were creating the relationship of master and servant? The parties did not create a master and servant relationship by either word or deed. Their Agreement expressly created an independent contractor relationship, and their conduct was consistent with their written expression.

(k) What was the right of either party to terminate the relationship without liability? Under the terms of their written Agreement, either party could terminate the relationship

1. The eleven factors are: (a) the nature of the contract between the parties, whether written or oral; (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (d) kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (e) the skill required in the particular occupation; (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (g) the length of time for which the person is employed; (h) the method of payment, whether by the time or by the job; (i) whether or not the work is a part of the regular business of the employer; (j) whether or not the parties believe they are creating the relationship of master and servant; and (k) the right of either to terminate the relationship without liability. *Page* at 784–85, *Coleman* at 1159.

at any time and for any reason without liability.

In *Mahan v. NTC of America,* 832 P.2d 805, 808 (Okla.1992) we held that the owner of a truck who was hired by a manufacturer to transport the manufacturer's goods was an independent contractor. There, as here, the claimant's agreement with the manufacturer expressly stated that the parties intended to create an independent contractor relationship; claimant was paid by the load, and was not subject to the direction or control of the manufacturer concerning how he conducted the transportation. There we said, "the express contract language, the mode of payment, and the lack of supervision by NTC all indicate that the parties created a contractor-independent contractor relationship." Here, as in *Mahan,* the contract expressly makes Duncan an independent contractor; Duncan's compensation was contingent on how much he sold, and his sales activities were completely unsupervised. Thus, we find that Duncan was an independent contractor, not an employee. The Workers' Compensation Court correctly held that it lacked jurisdiction to award Duncan benefits.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; ORDER OF THE WORKERS' COMPENSATION COURT SUSTAINED.

HODGES, C.J., and SIMMS, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

LAVENDER, V.C.J., and OPALA and ALMA WILSON, JJ., dissent.

OPALA, Justice, with whom LAVENDER, Vice Chief Justice, joins, dissenting.

When testing the status of a claimant *qua* employee or independent contractor, the court must place *principal* reliance on the parties' *actual conduct* vis-a-vis one another, especially so when their actions appear at variance with the written contract by which the legal relationship came to be defined. *Brewer v. Bama Pie, Inc.,* Okl., 390 P.2d 500, 502 (1964).

Because the parties' actual conduct is clearly indicative of a master-servant bond, I dissent from today's opinion.